[Cite as *Cook v. Bradley*, 2015-Ohio-5039.]

| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
|---|---|---|
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF LORAIN | ) | |

SANDRA COOK

    Appellant

    v.

SAM R. BRADLEY

    Appellees

C.A. No.    15CA010726


APPEAL FROM JUDGMENT
ENTERED IN THE
COURT OF COMMON PLEAS
COUNTY OF LORAIN, OHIO
CASE No.    10CV167905

DECISION AND JOURNAL ENTRY

Dated: December 7, 2015

---

SCHAFER, Judge.

{¶1} Plaintiff-Appellant, Sandra Cook, appeals the order of the Lorain County Court of Common Pleas directing two of her attorneys to produce their complete files, including confidential communications, regarding their representation of Ms. Cook in the divorce action that underlies this legal malpractice claim. For the reasons that follow, we reverse.

I

{¶2} Ms. Cook filed a complaint alleging that Defendants-Appellees, Sam Bradley and Sam R. Bradley Co., L.P.A. (collectively, "Appellees"), committed legal malpractice in their representation of Ms. Cook in the underlying divorce action. The basis for the complaint was that Mr. Bradley purportedly failed to accurately set forth the settlement agreement in the underlying "case within a case." Appellees filed an answer denying any malpractice and also asserted a counterclaim for outstanding legal fees allegedly owed by Ms. Cook from the divorce action.

{¶3}    Ms. Cook's divorce action was still pending when she filed her legal malpractice action so this matter was stayed pending the resolution of the divorce proceedings. During those proceedings, Ms. Cook retained two new attorneys after discharging Mr. Bradley: Michael Tony and John Heutsche. The divorce proceedings finally concluded in May 2013 and the legal malpractice action was returned to the active docket.

{¶4}    The record reflects that discovery between the parties then began. Ms. Cook sought the return of her file from Mr. Bradley, who refused and asked for a protective order since it would be unduly burdensome to produce the file and there was a "lien" on the file due to the outstanding fees owed by Ms. Cook. The trial court denied Appellees' motion for a protective order and ordered Appellees to return the file. Ms. Cook subsequently filed an expert report from Margaret Stanard, an attorney who opined that Mr. Bradley's representation fell below the standard of care expected of attorneys in Lorain County. In Ms. Stanard's report, she focused on Mr. Bradley's conduct before his discharge and its effect on the underlying divorce action. The report only refers to Mr. Tony and Mr. Heutsche when it outlines Ms. Standard's opinion that because of Mr. Bradley's breach of the standard of care, Ms. Cook had to hire both lawyers and accrue additional attorney fees. The report states that Mr. Tony charged Ms. Cook $1,500 in attorney fees and that Mr. Heutsche charged $11,955 in attorney fees and expenses.

{¶5}    Appellees issued subpoenas to Mr. Tony and Mr. Heutsche requesting that they produce their "complete file[s] regarding [Ms. Cook] to include but not limited to all pleadings, motions, discovery, written and electronic correspondence and emails between [them] and Ms. Cook's agents and/or representatives, and notes." According to the record, Mr. Tony and Mr. Heutsche did provide non-privileged portions of their files but they also refused to hand over confidential communications that they argued were subject to the attorney-client privilege.

During her deposition, Ms. Cook also refused to answer the following question from Appellees' attorney on the basis of the attorney-client privilege: "So just so that I'm aware, so that I'm clear[,] you had no communication with any of your subsequent attorneys, either them giving you advice or you asking them for advice, as to whether you could file a [qualified domestic relations order?]"

{¶6}   After the parties' failure to resolve the discovery dispute, Appellees filed a motion requesting that the trial court compel "[Ms. Cook] and her subsequent divorce attorneys to produce communications between them." Appellees claimed that the requested communications were essential to developing their defense against the legal malpractice claim and were subject to disclosure under the self-protection exception to the attorney-client privilege. Ms. Cook opposed the motion to compel. Without a hearing, the trial court granted Appellees' motion to compel.

{¶7}   Ms. Cook timely appealed this order, asserting a single assignment of error for our review.

**Assignment of Error**

**Does the self[-]protection exception to the attorney-cleint [sic] privilege emcompass [sic] confidences enjoyed with counsel hired to replace a divorce attorney sued for legal malpractice?**

{¶8}   In her sole assignment of error, Ms. Cook argues that the trial court erred in compelling the production of her confidential communications with her subsequent attorneys in the underlying divorce action. We agree.

{¶9}   We generally review discovery orders for an abuse of discretion. *Giusti v. Akron Gen. Med. Ctr.*, 178 Ohio App.3d 53, 2008-Ohio-4333, ¶ 12 (9th Dist.). But, this general trend does not apply when we review a discovery order relating to the protection or compelling of information that is confidential and potentially subject to privilege. *Med. Mut. of Ohio v.*

*Schlotterer*, 122 Ohio St.3d 181, 2009-Ohio-2496, ¶ 13.  Instead, in privilege contexts, we must apply de novo review and afford no deference to the trial court's order.  *Teodecki v. Litchfield Twp.*, 9th Dist. Medina No. 14CA0035-M, 2015-Ohio-2309, ¶ 45.

{¶10}  "[I]n Ohio, the attorney-client privilege is governed by statute, R.C. 2317.02(A), and in cases that are not addressed in R.C. 2317.02(A), by common law."  *Squire, Sanders & Dempsey, L.L.P. v. Givaudan Flavors Corp.*, 127 Ohio St.3d 161, 2010-Ohio-4469, ¶ 17.  R.C. 2317.02(A)(1) pertinently provides that an attorney shall not testify "concerning a communication made to the attorney by a client in that relation or concerning the attorney's advice to a client, except that the attorney may testify by express consent of the client[.]"  This statutory proscription only relates to a testimonial privilege.  *State ex rel. Dawson v. Bloom-Carroll Local Sch. Dist.*, 131 Ohio St.3d 10, 2011-Ohio-6009, ¶ 27.  Nevertheless, "[t]he attorney-client privilege reaches far beyond a proscription against testimonial speech [and] protects against any dissemination of information obtained in the confidential relationship."  *Am. Motors Corp. v. Hufstutler*, 61 Ohio St.3d 343, 348 (1991).  When assessing the breadth of the attorney-client privilege, we must consider that the ultimate purpose of its protection "'is to encourage full and frank communication between attorneys and their clients and thereby promote broader public interests in the observance of law and administration of justice.'"  *State ex rel. Leslie v. Ohio Hous. Fin. Agency*, 105 Ohio St.3d 261, 2005-Ohio-1508, ¶ 20, quoting *Upjohn Co. v. United States*, 449 U.S. 383, 389 (1981).

{¶11}  Ohio has recognized a number of exceptions to the attorney-client privilege that are not codified in R.C. 2317.02(A).  *Squire Sanders & Dempsey* at ¶ 24.  This matter implicates the self-protection exception, "which permits an attorney to testify concerning attorney-client communications when necessary to establish a claim for legal fees on behalf of the attorney or to

defend against a charge of malpractice or other wrongdoing in litigation between the attorney and the client." *Id*. at paragraph one of the syllabus. The Court recognized this exception "because '[i]t would be a manifest injustice to allow the client to take advantage of [the attorney-client privilege] to the prejudice of his attorney * * * [or] to the extent of depriving the attorney of the means of obtaining or defending his own rights.'" (Alterations sic.) *Id*. at ¶ 43, quoting *Mitchell v. Bromberger*, 2 Nev. 345, 349 (1866).

{¶12} The self-defense exception is not a rule of discovery; rather, it is a rule of disclosure that allows an attorney to disclose his or her communications with a former client to support a claim for outstanding legal fees or defend against a claim of malpractice or other wrongdoing. As applied to this situation, the exception is designed to put the defending attorney on the same plane as other civil defendants, as well as the plaintiff, by allowing him or her to testify about relevant facts that are within the attorney's personal knowledge. *See id*. at ¶ 41 ("'"[T]he attorney-client privilege cannot at once be used as a shield and a sword."'"), quoting *In re Lott*, 424 F.3d 446, 454 (6th Cir.2005), quoting *United States v. Bilzerian*, 926 F.2d 1285, 1292 (2d Cir.1991). Since the exception is simply designed to equalize the defending attorney's footing, it makes little sense to expand the self-protection exception so that the defending attorney can breach the attorney-client relationship between the plaintiff/former client and his or her new attorney, an avenue that is unavailable to other civil defendants. No authority from Ohio supports such a dramatic expansion. Indeed, guidance from the Supreme Court of Ohio and the Eighth District Court of Appeals suggests that the attorney-client privilege protects confidential communications between a malpractice plaintiff and subsequent counsel. *See Jackson v. Greger*, 110 Ohio St.3d 488, 2006-Ohio-4698, ¶ 13 (holding that attorney-client privilege protected communications between malpractice plaintiff and subsequent counsel and

the privilege was not impliedly waived when the plaintiff brought action against the defendant); *H&D Steel Servs., Inc. v. Weston, Hurd, Fallon, Paisley & Howley*, 8th Dist. Cuyahoga No. 72758, 1998 WL 413772 (July 23, 1998) (reversing trial court's order that subsequent counsel produce confidential communications with the malpractice plaintiff since it did not expressly or impliedly waive the attorney-client privilege); *see also Miller v. Superior Court*, 111 Cal.App.3d 390, 392 (1981) (holding that the self-protection exception "is limited to communications between the client and the attorney charged with malpractice").

{¶13} Here, Appellees seek confidential communications between Ms. Cook and her subsequent attorneys. We hold that under the circumstances of this matter, these communications do not fall under the self-protection exception to the attorney-client privilege and that the communications are not subject to disclosure on that basis. As a result, we reverse the trial court's order compelling the production of Ms. Cook's confidential communications with Mr. Tony and Mr. Heutsche since the court erroneously determined that the communications are subject to disclosure on the basis of the self-protection exception to the attorney-client privilege.

{¶14} Accordingly, we sustain Ms. Cook's assignment of error.

## III

{¶15} Having sustained Ms. Cook's sole assignment of error, we reverse the trial court's order and remand this matter for further proceedings consistent with this opinion.

Judgment reversed,
and cause remanded.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Lorain, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellees.

_____
JULIE A. SCHAFER
FOR THE COURT

HENSAL, P. J.
CONCURS.

CARR, J.
CONCURRING IN PART, AND DISSENTING IN PART.

{¶16} While I agree that the judgment must be reversed, I respectfully dissent with respect to the scope of the remand. I would adopt the reasoning set forth in *Waite, Schneider, Bayless & Chesley Co., L.P.A. v. Davis*, S.D.Ohio No. 1:11CV00851, 2013 WL 4757486 (July 12, 2013). Accordingly, I would remand the matter to the trial court to conduct a hearing on the issue and to conduct an in-camera inspection of the file in question in order to "1) determine whether the content and timing of the other-attorney communications are relevant to determining

liability, and 2) weigh the benefit of protecting the privilege against the difficulty of discovering the facts relevant to liability by other means." (Internal quotations omitted.) *Davis* at *8.

APPEARANCES:

JONATHAN E. ROSENBAUM, Attorney at Law, for Appellant.

JONATHAN W. PHILLIP, Attorney at Law, for Appellee.