[Civ. No. 16748. Third Dist. Nov. 13, 1979.]

In re the Marriage of ROBERTA L. and GARY N. BROWN.
GARY N. BROWN, Appellant, v.
ROBERTA L. BROWN, Respondent.

COUNSEL

Gerald D. Wolcott for Appellant.

John D. Brody and Kurt M. Pedersen for Respondent.

OPINION

**JANES, J.**—Appellant, Gary N. Brown, appeals from an order of the Superior Court of Sacramento County quashing service of a subpoena on Paul Brown, the present husband of Roberta L. Brown, Gary's former wife. The subpoena required the deposition testimony of Paul and the production of state and federal income tax records over the years of marriage of Paul and Roberta.

FACTS

From the abbreviated record on appeal, it appears that Roberta filed a petition seeking to regain the legal custody of the three children of her marriage to Gary, their custody having been previously changed, some time after entry of the decree of dissolution, from Roberta to Gary. Gary then sought an order to compel Roberta to pay child support and, as a first step, he obtained a subpoena and subpoena duces tecum ordering the deposition of Paul and the production of certain income tax returns filed during Roberta's marriage to Paul. Paul

appeared at the deposition but refused to produce the income tax returns and refused to testify, asserting his spousal privilege.

Gary then sought to have sanctions imposed upon the ground that Paul and Roberta's attorney were aware that Civil Code section 250[1] precluded the assertion of the marital privilege in child support proceedings. Paul's response was a motion to quash the subpoenas. After several hearings Paul's motion to quash was granted, and it is from that order that Gary appeals.

## I

Although not the direct issue on appeal, we deal first—and favorably—with Gary's contention that, since the mother as well as the father is charged with the obligation of child support (Civ. Code, § 196), all property of the mother, including her community interest in the income of the new spouse, may be looked to in discharge of that obligation. "The trial court has the power to require either father or mother or both to assist in the support of the minor children (Civ. Code, § 196), and the community property, quasi-community property, and the separate property may be subjected to the support of children (Civ. Code, § 143)." (*Nunes* v. *Nunes* (1964) 62 Cal.2d 33, 39 [41 Cal.Rptr. 5, 396 P.2d 37]; see also *Armstrong* v. *Armstrong* (1976) 15 Cal.3d 942, 947 [126 Cal.Rptr. 805, 544 P.2d 941]; *In re Marriage of Muldrow* (1976) 61 Cal.App.3d 327, 332 [132 Cal.Rptr. 48].)

Civil Code section 4807 (Stats. 1969, ch. 1608, § 8, pp. 3314, 3335), formerly Civil Code section 143, provides as follows: "The community property, the quasi-community property and the separate property may be subjected to the support, maintenance, and education of the children in such proportions as the court deems just."

Civil Code section 5127.5 provides in pertinent part: "The wife's interest in the community property, including the earnings of her husband, is liable for the support of her children to whom the duty to support is owed, provided that for the purposes of this section, prior support liability of her husband plus three hundred dollars ($300) gross

---

[1]Civil Code section 250 reads as follows: "Laws attaching a privilege against the disclosure of communications between husband and wife are inapplicable under this title. Husband and wife are competent witnesses to testify to any relevant matter, including marriage and parentage."

monthly income shall first be excluded in determining the wife's interest in the community property earnings of her husband."

 Paul directs our attention, however, to a seemingly inconsistent statute, which he contends excludes resort to his income for the discharge of Roberta's obligation of child support. Civil Code section 199 (Stats. 1973, ch. 987, § 1, p. 1898) provides: "The obligation of a father and mother to support their natural child *under this chapter,* including but not limited to Sections 196 and 206, shall extend only to, and may be satisfied only from, the earnings and separate property of each, if there has been a dissolution of their marriage as specified by Section 4350." (Italics added.)[2]

The apparent inconsistency in the statutes does not amount to a fatal conflict, despite the fact that section 199 is the most recent of the three enactments. "'Repeals by implication are not favored and are recognized only where there is a conflict between two or more legislative enactments.' (*Rexstrew* v. *Huntington Park* (1942) 20 Cal.2d 630, 634 [128 P.2d 23].) They are recognized only when there is no rational basis for harmonizing the two potentially conflicting statutes (*People* v. *Leon Fook* (1928) 206 Cal. 64, 69-70 [273 P. 779]), and the statutes are 'irreconcilable, clearly repugnant, and so inconsistent that the two cannot have concurrent operation. The courts are bound, if possible, to maintain the integrity of both statutes if the two may stand together.' (*Penziner* v. *West American Finance Co.* (1937) 10 Cal.2d 160, 176 [74 P.2d 252]; *California Drive-in Restaurant Assn.* v. *Clark* (1943) 22 Cal.2d 287, 292 [140 P.2d 657, 147 A.L.R. 1028].)" (*In re White* (1969) 1 Cal.3d 207, 212 [81 Cal.Rptr. 780, 460 P.2d 980] (Traynor, C.J.); see, e.g., *Fuentes* v. *Workers' Comp. Appeals Bd.* (1976) 16 Cal.3d 1, 6-7 [128 Cal.Rptr. 673, 547 P.2d 449]; *Rees* v. *Layton* (1970) 6 Cal.App.3d 815, 821 [86 Cal.Rptr. 268]; *Veterans of Foreign Wars* v. *State of California* (1974) 36 Cal.App.3d 688 [111 Cal.Rptr. 750]; *American Friends Service Committee* v. *Procunier* (1973) 33 Cal. App.3d 252, 264 [109 Cal.Rptr. 22].)

Several factors support this conclusion.

 First, it should be noted that section 199, by its express terms states: "The obligation of a father and mother to support their natural

[2]Section 199 is chaptered under the Title "Parent and Child," sections 4807 and 5127.5 (of the Family Law Act) under the Titles "Property Rights of the Parties" and "Husband and Wife," respectively.

child *under this chapter*...shall extend only to, and may be satisfied only from, the earnings and separate property of each...." (Italics added.) Thus, the section is limited in application to child support proceedings brought under that chapter. However, that chapter is not the sole legislation providing for child support. Civil Code section 4700 (albeit, also antedating § 199) provides that "[i]n any proceeding where there is at issue the support of a minor child, the court may order either or both parents to pay any amount necessary for the support, maintenance, and education of the child....," thus stating an obligation of support independent of section 199. Therefore, section 199 is not dispositive and cannot be a limitation on the authority of the courts to permit access to community property. Under the obligations created by section 4700, a court may consider all property, separate, community, and quasi-community. (Civ. Code, § 4807.)

Second, the legislative history of Civil Code section 199 discloses that Senate Bill No. 569, from which section 199 emerged, originally included a repealer of section 5127.5, but that before passage the repealing language was stricken (Sen. Bill No. 569 (1973-1974 Reg. Sess.) § 23; Sen. Amend. to Sen. Bill No. 569 (1973-1974 Reg. Sess.) May 23, 1973, § 21; Sen. Amend. to Sen. Bill No. 569 (1973-1974 Reg. Sess.) June 11, 1973, § 21), thus negating any legislative intent to repeal section 5127.5 and any conclusion by the Legislature that the two sections were conflicting.

## II

■ We turn next to the principal issue on this appeal, the accessibility of the income tax returns.

Revenue and Taxation Code section 19282 provides as follows: "Except as otherwise provided in this article,[3] it is a misdemeanor for the Franchise Tax Board or any member thereof, or any deputy, agent, clerk, or other officer or employee of the state (including its political subdivisions), or any former officer or employee or other individual, who in the course of his or her employment or duty has or had access to returns, reports, or documents required under this part, to disclose or

---

[3]Revenue and Taxation Code section 19283 provides for disclosure upon court order in aid of enforcement of the tax laws and for the prosecution of violations; sections 19284 through 19286.5 for disclosure to designated public officials for purposes not here relevant.

make known in any manner information as to the amount of income or any particulars set forth or disclosed therein."

In *Webb* v. *Standard Oil Co.* (1957) 49 Cal.2d 509 [319 P.2d 621], the Supreme Court held that compelling a taxpayer to produce a copy of his income tax returns defeats the legislative purpose underlying section 19282; that the purpose of the section "is to facilitate tax enforcement by encouraging a taxpayer to make full and truthful declarations in his return, without fear that his statements will be revealed or used against him for other purposes." (*Webb, supra,* p. 513.) "The effect of the statutory prohibition is to render the returns privileged, and the privilege should not be nullified by permitting third parties to obtain the information by adopting the indirect procedure of demanding copies of the tax returns." (*Id.;* see also *Sav-On Drugs, Inc.* v. *Superior Court* (1975) 15 Cal.3d 1, 6 [123 Cal.Rptr. 283, 538 P.2d 739].) Since the taxpayer's federal income tax return contains substantially the same information as his state return for the same period, the *Webb* court extended the same privilege to copies of a taxpayer's federal returns. (*Webb,* pp. 513-514.)

*Wilson* v. *Superior Court* (1976) 63 Cal.App.3d 825 [134 Cal.Rptr. 130], found a waiver of the taxpayer's privilege of confidentiality in a suit against an accounting firm alleging negligent advice on the tax consequences of a real estate sale. This court concluded that plaintiff taxpayer had waived the privilege against disclosure of her income tax returns by filing a complaint which raised issues as to the existence, content and tax consequences of those returns, and ordered the trial court to vacate its order denying defendants-petitioners access to her returns.

In *Miller* v. *Superior Court* (1977) 71 Cal.App.3d 145 [139 Cal.Rptr. 521], the court, on policy grounds, denied a husband's petition for a writ to prohibit the trial court from enforcing its order requiring him to produce and permit the inspection and copying of his income tax returns. The court concluded "that the time has arrived when a policy favoring the confidentiality of tax returns must give way to the greater public policy of enforcing child support obligations." (71 Cal.App.3d at p. 149.) In *Miller* the wife sought, through contempt proceedings, to collect an arrearage of $6,340 in child support which had accumulated following entry of an interlocutory judgment of dissolution. After the husband testified at the order to show cause hearing that he was unable to provide any support for their children, the wife

noticed a motion for production of his income tax returns covering a period of six years. The husband opposed the motion, upon a claim of privilege, but the trial court granted the wife's motion to produce and, as we have seen, the appellate court denied the husband relief, carefully limiting its decision, however, "to the narrow issue of the assertion of the privilege of nondisclosure of income tax returns in the context of proceedings to enforce child support obligations." (71 Cal.App.3d at p.149.)

The *Miller* limitation is of importance to the case at bench. There the wife sought to enforce payment of the arrearage under an existing order for child support; here Gary seeks an order modifying the interlocutory decree to compel Roberta to pay child support. The difference is more than one of form, in the context of the policy to be followed. Furthermore, the *Miller* case involved proceedings solely between divorced spouses; the interest and rights of one in Paul's position were not in issue. The Millers' marriage had terminated; that of Paul and Roberta is intact, and the public interest in preservation of the marital relationship, while not directly implicated in the privilege against disclosure of tax returns, cannot simply be ignored. We conclude, therefore, that to extend discovery by requiring such disclosure in such instances would be contrary to, not in aid of a sound public policy, and that Paul was properly allowed to assert his privilege against disclosure of the returns.

## III

The question remains whether Paul may be deposed as a witness. Paul relies principally upon Evidence Code sections 970 and 971.[4] Gary looks to section 250 of the Civil Code.[5] Evidence Code sections 970 and 971 appear in the code under the Division entitled "Privileges;" section 250 in the Civil Code under Division First, Part 3, "Personal Relations," as part of the Uniform Civil Liability for Support Act.

---

[4]Evidence Code section 970 provides: "Except as otherwise provided by statute, a married person has a privilege not to testify against his spouse in any proceeding." Evidence Code section 971 provides: "Except as otherwise provided by statute, a married person whose spouse is a party to a proceeding has a privilege not to be called as a witness by an adverse party to that proceeding without the prior express consent of the spouse having the privilege under this section unless the party calling the spouse does so in good faith without knowledge of the marital relationship."

[5]See footnote 1, *ante*, page 705.

Gary contends that Civil Code section 250 creates an "exception" to the marital privilege defined in sections 970 and 971 of the Evidence Code when child support is in issue; Roberta, that the Evidence Code provisions govern.

Although we are of the view that Civil Code section 250 does not grant Gary the right to depose Paul as a witness in the proceeding against Roberta, the issue requires no extended discussion. The record shows that the purpose of the deposition was to question Paul concerning his earnings and financial status, in obvious conjunction with the production of his income tax returns. What we have said in the disposition of that issue is equally applicable here, if it does not in fact moot the issue concerning his privilege not to testify or to be called as a witness against his wife.

The order from which the appeal is taken is affirmed.

Puglia, P. J., and Reynoso, J., concurred.