Filed 1/23/19

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| SAYS SIRI, Plaintiff and Appellant, v. SUTTER HOME WINERY, INC., Defendant and Appellant. | A141335 (Napa County Super. Ct. No. 26-59035) |

Plaintiff Says Siri appeals the dismissal of her wrongful discharge complaint following the entry of summary judgment in favor of defendant Sutter Home Winery, Inc., doing business as Trinchero Family Estates (defendant or TFE). Defendant has cross-appealed, challenging the trial court's denial of its motion for sanctions.

Plaintiff's complaint alleges that she was terminated in retaliation for having brought to the attention of defendant's management and the Board of Equalization defendant's failure to have paid use taxes owed by the company in violation of Labor Code section 1102.5 and public policy. The litigation has an unnecessarily complex and extended history, due in large part to a misconception of the relevant issues by both parties. Proceeding as if the case turns on whether plaintiff correctly accused defendant of failing to pay use taxes it owed, plaintiff pursued and defendant strenuously resisted efforts to obtain copies of defendant's tax returns, leading ultimately to a decision by this court that defendant had not "waived the privilege against forced disclosure of tax returns" and that no exception to the tax return privilege applied to entitle plaintiff to compel the production of the returns. (No. A139114, Sept. 5, 2013 [nonpub. opn.].) Much disputation has also centered on whether plaintiff wrongly obtained, disclosed or destroyed material evidence. However, in moving for summary judgment defendant

1

failed to address, much less negate, plaintiff's allegation that she was terminated in retaliation for raising the tax-avoidance issue, nor did it seek to establish an affirmative defense to the claim. The summary judgment motion was based and granted on the premise that plaintiff had acknowledged that she could not prove her case without the tax returns. Because plaintiff has not so acknowledged and defendant has not shown this to be true, the motion was improperly granted. There was no abuse in the trial court's denial of sanctions.

## Background

Plaintiff's complaint alleges she was employed as a "General Ledger Staff Accountant" for defendant and that her primary duties included "filing sales and use tax returns for applicable states, including the State of California. . . . [¶] . . . [¶] Having reasonable cause to believe that TFE was in noncompliance with state law pertaining to use tax payments, plaintiff repeatedly voiced to her direct supervisor . . . and to TFE top management . . . her highly specific concerns about TFE responsibility to report and pay use taxes on merchandise paid with TFE purchasing credit cards ('P-Cards'). . . . Plaintiff SIRI on December 9, 2010 communicated in writing to TFE general counsel . . . her concerns that TFE is out of compliance with the California sales and use tax law, including having not paid use tax on purchases with P-Cards, and asked that TFE be in full compliance with such law. [¶] Plaintiff SIRI in August and September, 2011 alerted TFE management that she had consulted the California State Board of Equalization ('BOE'), and that the BOE had confirmed that plaintiff was correct relative to her belief that TFE owed use taxes on purchases paid with P-Cards and that there should be sales tax due to the BOE on assets obtained from the acquisition of Joel Gott Wines."[1]

The complaint continues, alleging that although management authorized accrual and payment of the use tax in question for the third quarter 2011 sales and use tax return, management "declined to permit plaintiff Siri to make payment of unpaid use tax owed

---

[1]    The complaint also alleges that "[a]s a material condition of employment, TFE expected plaintiff to participate in, and condone, violation of applicable state law governing payment of use taxes by TFE."

2

for prior periods, notwithstanding . . . knowledge that the subject taxes have never been paid. [¶] Still, notwithstanding the obvious contradiction, TFE management declared plaintiff Siri to be wrong in her contention that TFE was non-compliant relative to use taxes owed on the subject purchases paid with P-Cards. [¶] As a direct result of plaintiff's communications to the BOE and to TFE management about TFE's failure to report and pay certain use taxes, TFE management retaliated against plaintiff Siri, by singling her out for special scrutiny, withdrawing duties from her, giving to someone else an office that had been promised to her, treating her as a pariah, and, ultimately, terminating her employment."

Plaintiff's first cause of action alleges that "[t]he aforesaid course of conduct of defendant[] toward Siri constituted retaliatory adverse action in violation of California Labor Code § 1102.5, subdivisions (a) through (c)."[2] The second cause of action alleges that this course of conduct "constituted a violation of public policies" set forth in section

---

[2]     Labor Code section 1102.5 now reads in part: "(a) An employer, or any person acting on behalf of the employer, shall not make, adopt, or enforce any rule, regulation, or policy preventing an employee from disclosing information to a government or law enforcement agency, to a person with authority over the employee, or to another employee who has authority to investigate, discover, or correct the violation or noncompliance, or from providing information to, or testifying before, any public body conducting an investigation, hearing, or inquiry, if the employee has reasonable cause to believe that the information discloses a violation of state or federal statute, or a violation of or noncompliance with a local, state, or federal rule or regulation, regardless of whether disclosing the information is part of the employee's job duties. [¶] (b) An employer, or any person acting on behalf of the employer, shall not retaliate against an employee for disclosing information, or because the employer believes that the employee disclosed or may disclose information, to a government or law enforcement agency, to a person with authority over the employee or another employee who has the authority to investigate, discover, or correct the violation or noncompliance, or for providing information to, or testifying before, any public body conducting an investigation, hearing, or inquiry, if the employee has reasonable cause to believe that the information discloses a violation of state or federal statute, or a violation of or noncompliance with a local, state, or federal rule or regulation, regardless of whether disclosing the information is part of the employee's job duties. [¶] (c) An employer, or any person acting on behalf of the employer, shall not retaliate against an employee for refusing to participate in an activity that would result in a violation of state or federal statute, or a violation of or noncompliance with a local, state, or federal rule or regulation.

All statutory references are to the Labor Code unless otherwise noted.

3

1102.5, subdivisions (a)-(c) and Revenue and Taxation Code section 6202, subdivision (a).[3]

Defendant's separate statement in support of its second motion for summary judgment cites evidence purporting to establish that both causes of action "fail[] because plaintiff represents that she must rely on [defendant's] sales and use tax returns to establish the elements of her claim and thereby would invade Sutter Home's tax return privilege," and "because plaintiffs reliance on information furnished to her in connection with her preparation of [defendant's] California sales and use tax returns to establish her claim is in violation of California Revenue and Taxation Code section 7056.6." The separate statement then recites many largely undisputed facts concerning plaintiff's employment, her complaints to management and reports to the Board of Equalization, and the lengthy procedural history leading to the determination that she was not entitled to the production of defendant's tax returns because of the taxpayer privilege. To establish that plaintiff represented that to prevail she must rely on the tax returns, the separate statement cites the following undisputed fact: "At the hearing on plaintiff's motion to compel, plaintiff's counsel represented to this court that [defendant's] use tax returns are the basis of the 'whole case': [¶] [Defendant's counsel]: But there's nothing before the court that indicates that her employment was terminated as a result of the California use tax returns, nothing. [¶] The court: That's what I understand is the basis of this claim. I mean, unless I am missing something here. Isn't that what the basis is? [¶] [Plaintiff's counsel]: Yes, your Honor, that's the whole case." The separate statement also recites the undisputed fact that "At the hearing on [defendant's] motion for reconsideration, plaintiff's counsel stated to this court that [defendant's] use tax returns are the 'very crux of the case.' "

In response to defendant's assertedly undisputed fact that "To make her complaint, plaintiff relied on information she received in connection with preparing [defendant's]

---

[3]     Revenue and Taxation Code section 6202, subdivision (a) reads in part: "Every person storing, using, or otherwise consuming in this state tangible personal property purchased from a retailer is liable for the tax."

tax returns and she could not have made her complaint without relying on that information," plaintiff admitted that she relied on unprivileged information she received in connection with preparing the tax returns, but responded further that her "wrongful termination case is *not* dependent upon introduction into evidence of privileged tax returns or privileged information that is an integral part of a tax return; rather it is dependent upon non-privileged communications with TFE management and the BOE."

The separate statement provided no purportedly undisputed facts as to the reasons for which plaintiff was discharged. The separate statement recited, "On May 11, 2012, plaintiff's employment with [defendant] ended" and that "plaintiff's complaint alleges that her employment was terminated because she voiced concerns that [defendant] did not report and pay California use tax on purchases made with [defendant's] P-Cards." However, no facts were offered to dispute the reason for which plaintiff claims to have been terminated.

The trial court granted summary judgment for the reasons urged by defendant. The court stated: "Plaintiff could not have made those allegations or obtained the [Board of Equalization's] 'confirmation' that she was correct that defendant owed taxes had she not seen and examined the returns which she admittedly prepared and shared all or part of that information with the Board. [¶] . . . [P]laintiff could not have reached her conclusions and communicated them to the BOE without knowledge and disclosure of defendant's tax return information. In fact, plaintiff has admitted that the returns themselves are the 'whole case' and the 'very crux of the case.' . . . In deposition, plaintiff admitted she 'could not have made this complaint had [she] not relied on information she received in connection with preparing tax returns for [defendant].' . . . When a party cannot litigate a claim without disclosing privileged information, the claim must be dismissed. (*General Dynamics v. Superior Court* (1994) 7 Cal.4th 1164, 1190.)"

### Discussion

A defendant moving for summary judgment bears the initial burden of presenting evidence establishing the lack of merit in the plaintiff's claims, either by showing that one or more elements of the plaintiff's causes of action "cannot be established" or that

there is a "complete defense" to each cause of action. (Code Civ. Proc., § 437c, subds. (o), (p)(2)); *Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 850.) Here, defendant made no attempt to demonstrate that the reason she was discharged was not the reason she alleges, nor has it argued that discharge for that reason would not violate section 1102.5, subdivision (b) or fundamental public policy. Indeed, there is little room to dispute that firing a "whistleblower" for complaining of the employer's willful failure to pay taxes that are due would support a right to relief under both of plaintiff's causes of action. (E.g., *Tameny v. Atlantic Richfield Co.* (1980) 27 Cal.3d 167, 172; *Green v. Ralee Engineering Co.* (1998) 19 Cal.4th 66, 75-80; *Casella v. SouthWest Dealer Services, Inc.* (2007) 157 Cal.App.4th 1127, 1138-1140.)

Rather, summary judgment was sought and granted on the ground that plaintiff cannot establish her case, essentially because the so-called taxpayer privilege prevents her from doing so. Although the extensive record in this case contains evidence of many things, it does not contain evidence establishing that plaintiff cannot prove she was discharged because she expressed her informed concerns that defendant was not filing accurate sales and use tax returns and paying use taxes that were due.

Defendant's argument and the trial court ruling in essence rest on two footings. First is the contention that plaintiff has acknowledged that she cannot prove her case without the tax returns the production of which she has been denied the right to compel. But plaintiff has never made such an acknowledgement. Defendant refers repeatedly to counsel's statements quoted above that the tax returns are "the whole case" and the "crux of the case." But while it is certainly true that plaintiff claims she was terminated because of her expressed concerns and complaints about the sales and use tax returns—that is indeed the "whole case"—she has never said that without the tax returns she cannot prove that was the reason for her termination. As her response quoted above indicates, she has argued exactly the opposite. Through her own testimony and the testimony of other witnesses, perhaps adverse witnesses, she may well be able to prove that she was impermissibly discharged for the reason she asserts. While plaintiff made intense and ultimately unsuccessful efforts to secure the tax returns, and the returns might well

6

strengthen her case, that is not to say that she cannot prove her case without the returns, and she has never asserted otherwise.

The same is largely true of statements by plaintiff or her attorney that she could not have "made her complaint" without relying on facts she learned from her work in preparing the tax returns. That is the essence of her causes of action – that in connection with her work in preparing and submitting sales and use tax returns she learned that not all use tax that was due was being reported, and she was terminated when and because she brought the matter to light. The implied taxpayer privilege precludes the forced disclosure of tax returns and of the information contained in those returns. (See, e.g., *Schnabel v. Superior Court* (1993) 5 Cal.4th 704, 719-721; *Sav-On Drugs, Inc. v. Superior Court* (1975) 15 Cal.3d 1, 6-7; *Brown v. Superior Court* (1977) 71 Cal.App.3d 141.) But neither case law nor reason suggests that this implied privilege precludes an employee from speaking up when it discovers that the employer is filing incorrect or even fraudulent returns, or precludes a wrongful termination claim if the employee is discharged for doing so. Prosecution of plaintiff's claim does not require the forced production of defendant's returns or of the content of its returns. Plaintiff's right to recover turns only on whether she was discharged for communicating her reasonable belief that defendant was not properly reporting its use tax obligation. (*Haney v. Aramark Uniform Services, Inc.* (2004) 121 Cal.App.4th 623, 641.) The elements of her causes of action were alleged and can be proved without violating the implied taxpayer privilege.

Second, is the premise that California Revenue and Taxation Code section 7056.6 precludes plaintiff's reliance on information furnished to her in connection with her preparation of defendant's sales and use tax returns. Section 7056.6, subdivision (a) provides: "Except as otherwise provided by law, any person who is engaged in the business of preparing, or providing services in connection with the preparation of, returns . . . , or any person who for compensation prepares any such return for any other person, and who knowingly or recklessly . . . [¶] (1) Discloses any information furnished to him or her for, or in connection with, the preparation of the return[, or] (2) Uses that information for any purpose other than to prepare, or assist in preparing, the return" is

guilty of a misdemeanor.[4] The trial court rejected plaintiff's argument that this section applies only to commercial tax preparers. We need not decide whether the statute applies to others, such as an employee of the company filing the return. Regardless of those to whom the statute applies, the section cannot be read to prohibit an employee from asserting to its employer that the employer is not paying a tax that is due, much less from bringing a wrongful discharge claim if the assertion led to the employee's discharge. Moreover, even if plaintiff violated the section by contacting the Board of Equalization (which we do not imply), we are aware of no authority indicating that the violation would bar her causes of action.

As indicated above, the trial court concluded its order granting summary judgment with the statement, "When a party cannot litigate a claim without disclosing privileged information, the claim must be dismissed," citing *General Dynamics Corp. v. Superior Court, supra,* 7 Cal.4th 1164. However, *General Dynamics*, which questioned the right of a former in-house attorney to pursue a retaliatory discharge claim, turned on the heightened fiduciary obligations of an attorney. "The lawyer's high duty of fidelity to the interests of the client work against a tort remedy that is coextensive with that available to the nonattorney employee." (*Id.* at p. 1189.) Moreover, rather than preclude the attorney from maintaining a retaliatory discharge claim because it threatens to disclose confidential information, the Supreme Court stated that "the trial courts can and should apply an array of ad hoc measures from their equitable arsenal designed to permit the attorney plaintiff to attempt to make the necessary proof while protecting from disclosure client confidences subject to the privilege." (*Id.* at p. 1191; see also *Chubb & Son v. Superior Court* (2014) 228 Cal.App.4th 1094, 1105-1106.) That directive is fully applicable here. Plaintiff is entitled to attempt to prove her claim without disclosing any

---

[4] Revenue and Taxation Code section 7056.6, subdivision (b) provides that the section does not apply if the disclosure is made with consent or pursuant to a subpoena, court order, or other compulsory process. There is no contention here that either of these exceptions applies.

information that is subject to the privilege. Defendant's showing in support of its summary judgment motion fails to show that she cannot do so.

Finally, the court did not abuse its discretion in refusing to impose sanctions for the plaintiff's alleged and disputed spoliation of evidence. The court denied defendant's motion without prejudice and indicated (before granting summary judgment) that relevant evidence and argument concerning the significance of any evidence that had been destroyed could be presented to the trier of fact at trial. There was no abuse of discretion.

## Disposition

The judgment is reversed and the matter is remanded to the trial court for further proceedings consistent with this opinion. Plaintiff shall recover her costs on appeal.


Pollak, P.J.

We concur:

Streeter, J.
Tucher, J.

9

| | |
|---|---|
| Trial court: | Napa County Superior Court |
| Trial judge: | Honorable Rodney G. Stone |
| Counsel for plaintiff and appellant: | Olivier Schreiber & Chao LLP<br>Duckworth Peters Lebowitz Olivier LLP<br>Monique Olivier<br><br>Campins • Benham-Baker, LLP<br>Julia Campins |
| Counsel for defendant and appellant: | Littler Mendelson, P.C.<br>Constance E. Norton<br>Lisa Lin Garcia<br><br>Dickenson, Petman & Fogarty<br>Gregory J. Walsh |

A141335